[Civ. No. 4149.  First Appellate District, Division One.—January 26, 1922.]

## W. J. GUNBY, Respondent, v. MINA AGNES SWARTS, Executrix, etc., Appellant.

[1] VENDOR AND VENDEE—COMPLETED CONTRACT—EVIDENCE.—In this action to recover the purchase price of certain properties alleged to have been sold and delivered by the plaintiff to the defendant, a completed transaction is shown to have been made through the medium of the letters and telegrams and the acts of the parties and their agents done in pursuance thereof.

[2] ID.—PAYMENT OF TAXES BY VENDEE—PURCHASE OF TAX TITLE— INSUFFICIENT EXCUSE FOR PERFORMANCE OF CONTRACT.—A vendee who under a contract to purchase is obligated to pay the taxes due on the property cannot be permitted to make use of a tax title purchased by him as an excuse for the violation of his agreement to purchase the regular chain of title from the owner thereof.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

Olin Wellborn, Jr., and Stephen Monteleone for Appellant.

James, Smith & McCarthy for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of the plaintiff in an action to recover the sum of $4,750 as the purchase price of certain properties alleged to have been sold and delivered by the plaintiff to the defendant, the said properties consisting of certain oil and mineral rights in certain lands located in the county of Ventura, state of California. The plaintiff claiming to own these rights was at the time the negotiations for their purchase began a resident of Chillicothe, Missouri. The defendant was at said time a resident of Hermosa Beach, California. The negotiations between the parties were conducted through the medium of letters and telegrams, and since the only question involved in this case is as to whether the minds of

the parties so met through the medium of these letters and telegrams and of the acts of the parties or their agents done in pursuance thereof as to have resulted in such a transaction as would give the plaintiff the right of recovery in this action, it will be necessary to follow the transaction through a *résumé* of what these documents contain.

The negotiations between the parties began with a letter from Swarts to Gunby dated December 21, 1916, wherein the former stated that he had learned that the latter owned mineral rights under a tract of land in the Ojai Valley, of which he had a chance to sell the surface to parties who desired also to secure these mineral rights. He therefore asked if Gunby would consider an offer of $20 per acre, allowing five per cent commission on the sale. On January 11, 1917, Gunby replied to this letter indicating that an oil company of which he owned or controlled a majority of the stock owned the property and that it would be willing to sell at $30 per acre net, but not with the five per cent commission. To this letter Swarts replied, stating that he could handle the property at the price of $30 per acre, but would expect to receive the five per cent commission, and suggesting that if this was satisfactory a deed be made in his name and forwarded either to Gunby's brother at Long Beach or the Ventura Abstract Company, subject to his approval, and to be delivered to him when the purchase price should be paid in full. In response to this letter Gunby replied that while the title of the property was in him the stockholders of the oil company had interests therein which led him to call a meeting of the stockholders on February 8th, with the object of authorizing a sale of the property at $30 per acre net, but that having the proxies of over seventy-five per cent of these stockholders he would be prepared after that date to execute a quitclaim deed to the property upon the terms stated in his former letter. This communication was referred by Swarts to his attorney, Olin Wellborn, Jr., who it is admitted was the agent of Swarts to carry on the negotiations and who on February 2, 1917, wrote to Gunby regarding an abstract to the property, to which Gunby replied on February 6th, stating that he had an abstract which he could send to them if desired, but that it was apparently incomplete. In the meantime Wellborn had been corresponding with the Ventura Abstract Company and had

received a report showing the title to be in the Chillicothe
Oil and Mining Company, but subject to many sales for
taxes, all of which had been redeemed with the exception of
the taxes for 1913–14–15–16, the last two assessments being
in the name of Gunby. On February 10, 1917, Gunby wrote
to Swarts stating that the stockholders' meeting of the
Chillicothe Oil and Mining Company had been held and
that he had been authorized to make a deed to the property
and that he was in a position to close the deal if they could
get together on the price. To this letter Swarts replied on
February 16th, stating that he could get a party to pur-
chase the property at $30 per acre gross cost to them, but
that Gunby should allow him a reasonable commission.
Gunby replied by telegram on February 20, 1917: "Have
offer of 4,750.00 net to me. If you want oil & mineral
rights at this price, wire 500 earnest money. Will make
Q. C. deed subject to taxes deposit deed in bank at L. A.
to close 2–26–17. Answer." To this telegram Swarts re-
plied on the following day with a long telegram, stating in
substance that his attorney had not received the abstract
and that if Gunby would forward abstract to his attorney
and deed to the Title Insurance & Trust Company of Los
Angeles with instructions he would deposit $500 in escrow
with them at once and pay balance upon approval of abstract
and deed, to which Gunby sent a telegram in reply as fol-
lows: "Deposit five hundred dollars, earnest money in Title
Insurance and Trust Company, Los Angeles, Cal., to my
credit, on contract purchase of oil and mineral rights at
forty seven hundred fifty dollars net to me deed and abstract
ready to send on report from Bank of deposit in my name.
Have bank wire." Upon receipt of this telegram Swarts
deposited $500 with the Title Insurance & Trust Company
of Los Angeles, with written escrow instructions directing
the depositary to hold the same subject to purchase of the
oil and mineral rights in question from Gunby by quitclaim
deed at the total purchase price of $4,750, balance to be paid
upon delivery of the deed and abstract of title satisfactory
to him and requesting the depositary to wire Gunby that it
had said sum on account of said purchase and requesting
that he send deed and abstract for examination. The es-
crow instructions also contained the provision that the de-
posit was to be returned if the title proved unsatisfactory.

The Title Insurance Company accordingly wired Gunby notice of its receipt of the $500 and requesting the forwarding of the deed and abstract with specific instructions as to the delivery of the same. To this wire Gunby sent a reply stating: "Sent papers by regis. mail today. Full instructions in letter. Notify Mr. Swarts, and send me five hundred as per my wire to him." The letter of Gunby which followed on February 26th quoted his former telegram to Swarts as to terms of purchase, but complained that it did not appear that the money had been deposited to his credit but on account of purchase which was not according to his said telegram. However, he enclosed his deed, with instructions to deliver the same to Swarts upon his deposit in the postoffice of a draft for $4,750, all expenses to be paid by Swarts. The letter further stated that Swarts has had ample time to learn the status of the title and hence twenty-four hours was sufficient time to deposit the money, and that if he did not do so within twenty-four hours to return all papers to Gunby. To this letter the Title Insurance and Trust Company wired a reply on March 5, 1917, stating that there was an error in the recitals of the deed which required correction and that a new deed would be necessary, and that the attorney for Swarts stated that the balance of the money would be paid on receipt of the same. To this telegram Gunby replied by wire on the following day, saying: "You correct deed for me or return for correction"; to which the Title Insurance & Trust Company replied: "Parties ready to close forwarding new deeds tomorrow for execution," and followed this message with a letter inclosing the new deed, with instructions as to the form of its execution and request for its early return, in response to which Gunby wrote to the Title Insurance & Trust Company on March 12, 1917, transmitting new deed and directing its delivery to Swarts as per his letter of February 26, 1917. In this last letter it was noted that the matter of taxes had been omitted and if that implied that he was bound to pay them, not to deliver the deed but to return the same to him at once, as his offer to Mr. Swarts was $4,750 net cash to him. **[1]** It will be clarifying to pause at this point in the extended negotiations of the parties to point out that the minds of the parties apparently met at this stage of the transaction and that a completed agreement was thus con-

summated between them. The Title Insurance and Trust
Company was the agent and representative of the defendant
Swarts in all of the later stages of the correspondence, and
its letters and telegrams had brought them to the point of
a perfect understanding, by the terms of which Gunby was
to convey by quitclaim deed in its hands all of his right,
title, and interest in the oil and mineral rights in question
and was to receive for such transfer the net sum of $4,750.
Whatever objections the plaintiff had theretofore urged
against the form of the original deposit as "earnest" money
or "escrow" money had been waived by him, as had also
his insistence that the transaction should be closed within
twenty-four hours after his transmission of the original
deed. As to the matter of the unpaid taxes there could be
no issue, since the purchase price of the property was under-
stood to be $4,750 net to the grantor of the quitclaim deed,
which, even in the absence of the latter's express stipulation,
could mean nothing less than that the grantee was to take
the property subject to whatever taxes were outstanding
against its title. It is nowhere contended that such was not
the case. The reason why the transaction was not closed at
once according to the understanding thus fully arrived at
is disclosed by the later correspondence following the date
of March 12, 1917, when the plaintiff's corrected deed was
transmitted to the Title Insurance & Trust Company. It
then for the first time developed that the deed from the
Chillicothe Oil & Mining Company to Gunby was irregular,
for the reason that said corporation had forfeited its char-
ter under the revenue laws of the state. This entailed con-
siderable delay and much correspondence, resulting finally
in the execution of several deeds from parties having appar-
ent interests in the property, all of which were finally deliv-
ered to the defendant Swarts or his agents and which he
has ever since retained. In the meantime, however, Swarts
had procured to be executed to himself a tax deed from the
state of California, issued in June, 1917, upon a tax sale
of the said property for nonpayment of taxes, which, under
the arrangement between the parties, he was obligated to
pay. [2] Having obtained this tax deed he asserted, and
now asserts, that he was no longer bound to accept or pay
for the Gunby title as embodied in the several other deeds,
which, as above stated, had been delivered to and accepted

by him. We know of no law and we are cited to no authority which would justify such a position. In the purchase of the tax title to said property Swarts was merely paying the taxes due thereon which, as we have seen, he was bound to pay, and he cannot be permitted to make use of such tax title as an excuse for the violation of his agreement to purchase the regular chain of title to the property from the owner thereof. The findings and conclusions of the trial court are in accord with the foregoing and are, we think, fully supported by the evidence in the case. No other ground of error being urged, the judgment is affirmed.

Tyler, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 27, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.,* was not acting.